IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL KITCHEN,

    Petitioner,

v.

COURT OF COMMON PLEAS,
ROSS COUNTY, OHIO,

    Respondent.

CASE NO. 2:19-CV-3618
JUDGE GEORGE C. SMITH
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that this action be **DISMISSED.**

## I. BACKGROUND

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶5} The Ross County Grand Jury returned a secret indictment charging Michael Kitchen with one count of sexual battery in violation of R.C. 2907.03, a third-degree felony. The Ross County Sheriff's Office arrested Kitchen and following his arraignment the next day, he was released from custody upon posting a recognizance bond. In its bill of particulars the state alleged that Kitchen engaged in vaginal intercourse with Sara Howell, who was not his spouse, when he knew that she was unaware that the act was being committed.
>
> {¶6} In its opening statement at the jury trial, the state asserted Sara Howell and her boyfriend let Kitchen, her high school friend, sleep over on a couch in their apartment in Chillicothe after going to eat. After her boyfriend left the next morning for work, Howell awoke in her bedroom to discover that Kitchen was engaged in sex with her without her consent. Kitchen finished the sexual act, left the room, and went back to sleep on the couch in another room. After exchanging text messages with her father and a friend, Howell contacted the police, made a

report, and was administered a rape kit. The testing determined that Kitchen's DNA was found in semen in both Howell's vaginal and anal cavities.

{¶7} In Kitchen's counsel's opening statement, he contended that Kitchen and Howell engaged in consensual sex, which had been initiated by Howell. He further conceded that when Kitchen was awakened by three law enforcement officers responding to Howell's report of sexual battery, he lied that he did not have sex with Howell because he was terrified and did not know what Howell had told them.

{¶8} The state's first witness, Chillicothe Police Officer Shane Simmons, testified that he and Officer Chip Campbell were dispatched to Howell's apartment to respond to a reported sexual assault. They talked to Howell and then entered the apartment, where they observed Kitchen asleep on a couch. Then they contacted Detective Twila Goble, who arrived and with Officer Campbell, they began questioning Kitchen after advising him of his Miranda rights. Officer Simmons's body camera was activated during his interaction with both Howell and Kitchen. On cross-examination Kitchen's attorney played the body camera footage that had been provided to him by the state in discovery. However, Officer Simmons testified that the footage shown was not the end of his body camera footage. He indicated he had viewed other footage from his body camera concerning the reported sexual battery.

{¶9} Outside the presence of the jury Officer Simmons explained that there was approximately 21 minutes of additional footage of Officer Campbell interrogating Kitchen that the police had failed to disclose to the prosecutor because the old body cameras would download footage to the server in multiple sections when it became too lengthy. Kitchen moved for a mistrial based on the state's failure to disclose this evidence in discovery.

The trial court overruled Kitchen's motion, ordered the state to provide Kitchen with a copy of the undisclosed body camera footage, and continued the case until the next morning to permit Kitchen and his counsel to review the footage.

{¶10} The next morning after receiving the previously undisclosed recording of Officer Simmons's body camera footage, Kitchen's attorney again asked for a mistrial, generally asserting that "there would have been different statements and procedure and strategy in this case had we been provided it." He claimed that even if this additional undisclosed footage was excluded, "it still doesn't alleviate the issue that the jury knows a video exists and is not going to be play[ed] and I've made statements, or representations, that the video would be played * * *." Significantly, the parties and the trial court agreed that the state's failure to provide this footage to the defense was unintentional.

{¶11} The state noted Officer Simmons's and Detective Gobles's statements in a Master Incident Report, which the state had provided to Kitchen and his counsel,

2

referenced several of Kitchen's statements from the undisclosed body camera footage: (1) Kitchen told the officers that he did not remember having sex with Sara; (2) Kitchen told Officer Campbell he had a dream last night about having sex with his girlfriend; and (3) Kitchen stated that his girlfriend had told him that he had groped her in his sleep before.

{¶12} The trial court denied Kitchen's second motion for mistrial because: (1) despite his concession that he initially told police he did not have sex with Howell, Kitchen's defense of consensual sex was consistent with what both the undisclosed and disclosed portion of Officer Simmons's body camera footage revealed; (2) portions of the undisclosed body camera footage were disclosed to Kitchen in the police reports the state gave to the defense in discovery; and (3) although there were discrepancies and inconsistencies created by the state's Crim.R. 16 violation, they were not substantially material to Kitchen's defense.

{¶13} Nevertheless, the trial court prohibited the state "from utilizing any portion of the undiscovered video in any way, shape or form," but permitted the defense to use it in any way it felt necessary. The court finally noted that it had not had an opportunity to review the undisclosed footage, but that it would reserve further ruling until the court had the chance to compare it with the reports that were provided in discovery.

{¶14} Upon return from recess the trial court instructed the jury that "[b]ased upon the State's failure, not the defense, * * * to provide the remainder of the video, this Court has ruled that the undisclosed portion will not be admitted into evidence. Therefore, you are not to draw any inference that the Defendant has failed to produce the remainder of the video * * *." The parties then concluded their examination of Officer Simmons.

{¶15} On the state's direct examination of its next witness, Officer Campbell, it questioned him about statements Kitchen had made addressing why he stayed at Howell's apartment that night. Apparently, Kitchen told the officers that he and Howell had been friends for a while and they had not spoken for some time. Kitchen's counsel objected to this testimony on the basis that it had not been disclosed in discovery, but the state countered that Kitchen's statement was contained on the disclosed body camera footage. The trial court overruled the objection, but again warned the state that "if this officer testified about anything said only on the undisclosed portion, that is a violation of my order and if he violates my order or any other officer violates my order, I will grant a mistrial."

{¶16} Subsequently, the state asked Officer Campbell "when you were speaking with the Defendant in this case, did you happen to ask him about any dreams he might have had?" and the officer responded that he had. Kitchen objected and moved for a mistrial.

{¶17} The assistant prosecutor opposed the motion and stated that it was her understanding that she was permitted to ask about statements that were on the undisclosed part of the body camera footage if they were in fact contained in the police reports provided in discovery. Kitchen's statement about the dream was on both the undisclosed footage and the disclosed police reports. The assistant prosecutor stated that it was not her intent to violate the court's order and moved to strike her question and Officer Campbell's answer, and release the witness. The trial court noted that it did not understand how the assistant prosecutor had misinterpreted its order; it granted the mistrial. In its entry declaring the mistrial the court noted that it initially overruled Kitchen's motion for a mistrial based on the state's violation of Crim.R. 16, but granted Kitchen's renewed motion when the state violated the court's curative order.

{¶18} Subsequently, the trial court set the retrial date. Over four months after the mistrial and two months after rescheduling of the trial Kitchen filed motions to dismiss based on double-jeopardy and his constitutional speedy-trial rights. Kitchen claimed that the state intentionally goaded him to request a mistrial because of its prosecutorial misconduct and that the over five-month delay between the mistrial and the scheduled retrial was constitutionally unreasonable. The state responded.

{¶19} After the state responded the trial court denied Kitchen's motions to dismiss in two separate entries issued on the same date. Addressing double jeopardy the court concluded that "[a]lthough this Court cannot understand how his ruling was misinterpreted by the Assistant Prosecuting Attorney, this Court cannot find that the offending question was designed to goad the defendant into moving for a mistrial. It certainly was prosecutorial misconduct, but this Court cannot find that i[t] was the intention of the Assistant Prosecuting Attorney to cause a mistrial." On the constitutional speedy-trial claim the court concluded "the five month delay in rescheduling the Defendant's trial does not constitute presumptive prejudice" and "[e]ven in considering the four factor balancing test this Court cannot determine that the five month delay is constitutionally unreasonable."

II. ASSIGNMENTS OF ERROR

{¶20} Kitchen assigns the following errors for our review:

1. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT MICHAEL KITCHEN'S MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS.

2. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT MICHAEL KITCHEN'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS.

*State v. Kitchen*, 4th Dist. No. 18CA3640, 2018 WL 6819501, at *1-4 (Ohio Ct. App. Dec. 7, 2018). On December 7, 2018, the appellate court affirmed the judgment of the trial court. *Id.* On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Kitchen*, 155 Ohio St.3d 1414 (Ohio 2019).

On August 19, 2019, Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254. He asserts that the Double Jeopardy Clause prohibits his retrial, because the prosecutor improperly and intentionally goaded him into requesting a mistrial (claims one and two). It is the position of the Respondent that this claim lacks merit.

## II. STANDARD OF REVIEW

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

> The factual findings of the state appellate court are presumed to be correct.
>
> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding").  The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49.  The burden of satisfying the standards set forth in § 2254 rests with the petitioner.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, ... [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 562 U.S. at 102

6

("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.") (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

### III. ANALYSIS

As discussed, Petitioner asserts that the Double Jeopardy Clause bars his re-trial based on prosecutorial misconduct. According to the Petitioner, the prosecutor intentionally provoked him into requesting a mistrial by violating the trial court's order prohibiting use of undisclosed footage of Petitioner's taped interview with police during the direct examination of Officer Campbell so that the State would be able to use that footage in a retrial. The state appellate court rejected this claim, reasoning as follows:

7

{¶25} Kitchen asserts that the trial court erred in overruling his motion to dismiss, which was based on double-jeopardy grounds. We apply a de novo standard of review to address the denial of that motion. *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20.

{¶26} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution, and prohibits the state from subjecting a defendant to multiple trials for the same offense. *See Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) as cited in Katz & Giannelli, *Baldwin's Oh. Prac. Crim. L.,* Section 72:2 (3d Ed.2018).

{¶27} Generally, "[w]hen a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar a retrial." *State v. Loza*, 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994), citing *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); Katz & Giannelli, *Baldwin's Oh. Prac. Crim. L.*, Section 74:5 (3d Ed.2018) ("The United States Supreme Court has never been willing to accept a rigid rule that would automatically bar retrial under any circumstance following a mistrial, holding, instead, that in most instances a mistrial granted with the consent or on the motion of a defendant does not bar retrial under the Double Jeopardy Clause").

{¶28} Nevertheless, the United States and Ohio Supreme Courts have recognized a narrow exception to the general rule exists when prosecutorial misconduct giving rise to a successful motion for a mistrial was intended to provoke or goad the defendant into moving for a mistrial. *Kennedy* at 676, 679; *Loza* at 186. This determination requires the trial court to examine the totality of the circumstances to make a factual finding of the prosecutor's intent; it is entitled to great deference on appeal notwithstanding our general de novo review. *See, e.g., State v. Webster*, 1st Dist. Hamilton No. C-130700, 2014-Ohio-5647,¶ 10, citing *Kennedy* at 675; *see also Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 812 (6th Cir.2012) ("Although we review the state proceedings de novo, we nevertheless find it appropriate to give deference to the trial court's factual finding regarding the intent of the prosecutor because it was in the best position to make the finding").

{¶29} "A reviewing court may consider the following factors in determining whether the required intent to provoke a mistrial existed: (1) whether there was a sequence of overreaching prior to the single prejudicial incident; (2) whether the prosecutor resisted or was surprised by the defendant's motion for a mistrial; and (3) the findings of the trial and appellate courts concerning the intent of the prosecutor." *State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 27, citing *State v. Girts*, 121 Ohio App.3d 539, 553, 700 N.E.2d 395 (8th Dist. 1997);

*see also Kennedy* at 680 (Powell, J., concurring); *State v. Greene*, 7th Dist. Mahoning No. 02 CA 122, 2005-Ohio-2420, ¶ 24.

{¶30} In reviewing these factors here, we find no sequence of overreaching by the prosecuting attorney before the single question concerning whether Officer Campbell had asked Kitchen about any dreams he might have had. The trial court had previously determined that the state had failed to provide discovery of the 21 additional minutes of Officer Simmons's body camera footage, but the parties agreed, and the court found, that the discovery violation was unintentional and caused by the recording system used at the time. *See Betts* at ¶ 26, citing *Girts* at 553 ("Mere negligence will not suffice to show intent to provoke a mistrial"). The next instance of misconduct that Kitchen cites is when the assistant prosecutor asked Officer Campbell what statements Kitchen had made about why he stayed at Howell's apartment the night before the incident. But the trial court overruled his objection to this question, and the record does not contain any evidence that would contradict that ruling—the state represented that this evidence was contained in the body camera footage that had been properly disclosed to Kitchen in discovery. Therefore, there was no sequence of overreaching by the prosecutor before the question that prompted the mistrial.

{¶31} Moreover, even assuming that Kitchen could have established a sequence of overreaching before the conduct that resulted in the mistrial, the Supreme Court of the United States held in *Kennedy*, 456 U.S. 667, at 675-676, 102 S.Ct. 2083, 72 L.Ed.2d 416, that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion * * * does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *See also State v. Hodges*, 2018-Ohio-447, 105 N.E.3d 543, ¶ 18 (7th Dist.).

{¶32} Looking at the second factor, the record establishes that the state consistently and vehemently resisted Kitchen's motions for mistrial. And it apparently was genuinely surprised by the motion and the trial court's declaration of a mistrial. The assistant prosecutor professed confusion over whether she was permitted to elicit testimony concerning dreams when the substance of those same statements was previously disclosed in discovery through police reports. Although this did not prevent the trial court's declaration of mistrial, the state's confusion and its resistance does indicate that the state was surprised by it.

{¶33} On the final factor the trial court found that although the prosecutor's violation of its order warranted a mistrial, the solitary question to Officer Campbell concerning Kitchen's dreams was not intended by the prosecutor to force a mistrial as a strategic trial tactic. This line of questioning concerned peripheral evidence that did not substantially detract from Kitchen's stated defense of consensual sex and his admission that he had initially lied to the officers that he did not have sex with Howell. Because the trial court's conclusion on this issue is supported by the record, we accord it the deference it is entitled to.

*Webster*, 2014-Ohio-5647, at ¶ 10, citing *Kennedy*, 456 U.S. 667, 675, 102 S.Ct. 2083, 72 L.Ed.2d 416.

{¶34} Based on our *de novo* review we agree with the trial court that this case does not fit within "the narrow exception adopted by the United States Supreme Court in *Kennedy* * * * reserved for the limited set of circumstances where the nature of the state's misconduct clearly and unquestionably demonstrates its intent to cause or invite a mistrial." *See State v. Kelly*, 2015-Ohio-1948, 34 N.E.3d 513, ¶ 19 (1st Dist.).FN1 We overrule Kitchen's first assignment of error.

FN1: Although the parties assert that no Ohio case has ever found that this strict standard to prove a double-jeopardy violation based upon prosecutorial misconduct was satisfied, our own research uncovered at least one case. In *State v. Owens,* 127 Ohio App.3d 65, 711 N.E.2d 767 (6th Dist.), an appellate court held that the state goaded a defendant into seeking a mistrial when the prosecutor vigorously fought for more than three months and won the right to retain the confidentiality of an informant's identity, but the prosecutor then revealed the name of the informant during the state's opening statement. Needless to say, the facts in that case are distinguishable from the facts here.

*State v. Kitchen*, 2018 WL 6819501, at *4-6.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It protects criminal defendants from successive prosecutions for the same offense after acquittal or conviction, and from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The Double Jeopardy Clause precludes the State from making "'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity[.]'" *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (quoting *Green v. United States*, 355 U.S. 184, 187 (1957)).

> It protects defendants in cases "in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526–27, 6 L.Ed.2d 901 (1961). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949);

> accord *Arizona v. Washington*, 434 U.S. 497, 503–04, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978); *Dinitz*, 424 U.S. at 606, 96 S.Ct. at 1079; *Jorn*, 400 U.S. at 484–85, 91 S.Ct. at 556–57.

*Harpster v. Ohio,* 128 F.3d 322, 327 (6th Cir. 1999). Where a mistrial is declared at the defendant's request, the Double Jeopardy Clause does not prohibit re-trial on the charges unless circumstances indicate that the prosecutor intentionally provokes or goads the defendant into requesting a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 676–79 (1982). Merely establishing that the prosecutor acted improperly does not meet this standard; the defendant must show that the prosecutor acted with the purpose of aborting trial proceedings:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz, supra*, 424 U.S., at 609, 96 S.Ct., at 1080. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id*., at 675–76.

> "The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for mistrial does not bar a retrial. Yet the blunder will almost always be intentional- the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. But **unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows that he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.**"

11

*United States v. Barnwell*, 617 F.Supp.2d 538, 547 (E.D. Mich. 2008) (citations omitted; emphasis added) (quoting *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993). Notably, "appellate courts, including the Sixth Circuit, have been very reluctant to find the intent necessary to satisfy the *Kennedy* standard." *Id*. (citing *United States v. Koubriti*, 509 F.3d 746, 749 (6th Cir.2007), *cert. denied*, 552 U.S.1328 (2008). *See, e.g.*, *United States v. Thomas*, 728 F.2d 313, 318 (6th Cir. 1984) (no double jeopardy bar to retrial where the Court's "review of the record leads us to conclude that none of the prosecutor's behavior here will pass the intentional-goading-into-mistrial test of *Oreg*on"); *United States v. Curry*, 328 F.3d 970, 973 (8th Cir. 2003) (district court's ruling that retrial was not barred following post-trial grant of defendant's mid-trial motion for mistrial upheld on the basis that, despite the prosecutor's withholding of material impeachment evidence and improper comments during closing argument, these actions were not an attempt to goad defendant into requesting a mistrial); *United States v. Gonzalez*, 248 F.3d 1201, 1204 (10th Cir. 2001) (government's appeal of the district court's grant of defendant's mistrial motion not barred because the government's intent in introducing allegedly prejudicial evidence may have been to obtain a conviction rather than a mistrial); *United States v. Strickland*, 245 F.3d 368, 384 (4th Cir. 2001), *cert. denied*, 534 U.S. 894 (2001) (government's concealment of discoverable materials held not intended to provoke mistrial); *Greyson v. Kellam*, 937 F.2d 1409 (9th Cir. 1991) (no double jeopardy bar to retrial where misconduct showed the prosecutor's desire to convict, and not an intent to goad defendant into moving for mistrial).

A court's determination of prosecutorial intent to provoke a mistrial constitutes a factual finding that is presumed to be correct under the provision of 28 U.S.C. § 2254(e)(1). *See Wei v. Mackie,* No. 1:15-cv-259, 2018 WL 6729655, at *9 (W.D. Mich. Oct. 9, 2018) (citing *Oregon v. Kennedy*, 456 U.S. at 765).

> The Sixth Circuit, relying on Justice Powell's concurrence in *Kennedy*, has identified factors to guide the court's determination of prosecutorial intent to goad a mistrial. These include a sequence of overreaching prior to the single prejudicial incident, whether the prosecutor resisted or was surprised by the defendant's motion for mistrial, and the trial court's findings concerning prosecutorial intent. White, 914 F.2d at 752 (citing *Kennedy*, 456 U.S. at 680, 102 S.Ct. at 2092 (Powell, J., concurring)).

*Hampton v. Moore*, No. 2:07-cv-747, 2008 WL 4137905, at *12 (S.D. Ohio Aug. 28, 2008) (citing *United States v. Neufeld*, 949 F.Supp. 555, 559 (S.D. Ohio 1996)).

As discussed by the state appellate court, the record reflects that the prosecutor did not learn about the undisclosed portion of Petitioner's videotaped statement to police until Officer Simmons testified. (*Transcript*, ECF No. 5-5, PAGEID # 250, 254.) The trial court found, and the parties agreed, that the prosecutor had not intentionally failed to disclose that evidence. (PAGEID # 274-76.) The defense objected to Officer Campbell's testimony that Petitioner told police he had been friends with the alleged victim but they had not spoken for a while, in response to her question regarding what statements he had made about his reason for staying at her apartment that night. (*Transcript,* ECF No. 5-5, PAGEID # 296.) The prosecution had disclosed those statements to defense, and they were contained in the first part of Petitioner's videotaped statement to police. (PAGEID # 297.) Moreover, the prosecutor thought that Campbell would say that Petitioner slept there because he was drunk. (PAGEID # 298-99.) The trial court overruled the objection and warned the prosecution that it would grant a mistrial if Campbell testified "about anything said only on the undisclosed portion [of the videotape]." (PAGEID # 299.) Because Petitioner's dream statements were also contained in a report that had been disclosed to the defense prior to trial, the prosecutor thought she could ask Officer Campbell about those statements. (PAGEID # 303, 306.) Indeed, the prosecutor expressed surprise and confusion when the trial court sustained Petitioner's objection to her question to

13

Campbell regarding Petitioner's statements to police about his dreams. (PAGEID # 302-03.)

The prosecutor also stated as follows:

> "[Y]our Honor, my understanding was that you were permitting the State to use that, because it was disclosed."
>
> * * *
>
> Your Honor, I apologize that I misunderstood the decision with regard to this, to this Court's sanction. The, obviously, the intent was not to get anything in that was not permitted by the Court. The State would request that. . . I would move to strike that question and answer and [] release the witness.

(PAGEID # 307, 309.)

Contrary to the argument Petitioner's advances here, these facts fail to demonstrate that the prosecutor intended to goad Petitioner into requesting a mistrial. Moreover, the record does not reflect that the prosecution gained a tactical advantage by the declaration of the mistrial or that it needed any statements on the undisclosed portion of the videotape to establish the charges against him. Nor does the record reflect that the state court unreasonably applied or contravened federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented.

## IV. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those

14

portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE